UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RED RIVER RESOURCES, INC., <br> Plaintiff, <br> v. <br> CARLOS M COLLAZO, <br> Defendant. | Case No. 14-cv-04961-JCS <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br> Re: Dkt. No. 18 |

## I. INTRODUCTION

Red River Resources, Inc. ("Plaintiff") seeks judgment on a $6 million claim against Carlos Collazo ("Defendant"). Red River Resources, Inc. is an Arizona corporation, and Collazo lives in Los Altos, California. *See* Compl.; Answer. As such, the Court has diversity jurisdiction under 28 U.S.C. § 1332.[1] Plaintiff has filed a Motion for Summary Judgment on Sole Cause of Action in Complaint, on Collazo's Affirmative Defenses, and on Collazo's Counterclaim ("Motion"). The Court held a hearing on the Motion on April 3, 2015. For the reasons stated below, the Motion is GRANTED.

## II. BACKGROUND

### A. Procedural History & Facts

This case is the fourth in a series of legal proceedings that Red River filed against Carlos Collazo. They arise out of an investment that Red River made in companies controlled by Collazo. In December 2011, Red River filed a federal securities fraud suit in the United States District Court for the District of Arizona ("Arizona Federal Litigation") and subsequently a state fraud and breach of contract suit in Arizona ("Arizona State Litigation") against Collazo and his companies.

---

[1] The parties have consented to the undersigned magistrate judge's jurisdiction pursuant to 28 U.S.C. § 636(c).

*See* Defendant's Declaration of Carlos M. Collazo (Collazo Decl.), Ex. B–C (Complaints).

In January 2012, Collazo filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California, San Francisco Division ("Bankruptcy Court"). Case No. 12-bk-30217-TC ("Bankruptcy Case"). The case is still pending. *See* Declaration of Michael H. Ahrens in Support of Red River's Motion for Summary Judgment on Sole Cause of Action in Complaint, on Collazo's Affirmative Defenses, and on Collazo's Counterclaim (Ahrens Decl.) ¶ 4. In a sworn schedule of liabilities filed in the Bankruptcy Case, Collazo included a $7,839,281.00 debt to Mariner ("Mariner Note Claim") that was not scheduled as contingent, unliquidated, or disputed. *See* Ahrens Decl. ¶ 6. Red River filed an adversary proceeding ("Discharge Matter") in Bankruptcy Court arguing that Red River's claims against Collazo arising from the Arizona federal litigation should be non-dischargeable. *See* Collazo Decl., Ex. D (First Amended Complaint, Adv. Proc. No. 12-03060).

In June 2013, Collazo and Red River entered a Settlement Agreement and Mutual Release ("Release"). *See* Ahrens Decl., Ex. 1. The scope of the Release is the key issue raised by Defendant in the present case. The Release has an effective date on its face of June 28, 2013.[2] *Id.* at 18. The Release purports to cover:

> all claims, causes of action, obligations, costs, damages, demands, or losses that it [Red River, among others] has or may have against the Defendant Released Parties [Carlos Collazo, among others] as of the date hereof, including, but not limited to, all claims related to the Federal Litigation, the Arizona Litigation, the CMC BK Case and the Discharge Matter, but excepting any obligations, covenants, or representations arising out of the Settlement Agreement or judgments specifically contemplated therein to survive the Closing, including the Retained Claims…The Defendant Released Parties do not include Mariner Systems, Inc., XyberSecure, Inc., or Marsys Digital, LLC.

*Id.* The Settlement Agreement provides that "On the Closing Date, the Parties shall execute and deliver a Mutual General Release in the form of Exhibit A hereto," and defines the "Closing Date" as June 28, 2013. *Id.* at 6 ("June 28, 2013 (the 'Closing Date')"). The Release also contains a "No Further Condition" clause:

> The Closing shall not be conditioned upon the approval of, or entry

---

[2] In other parts of the Release, the effective date is labeled June 15, 2013; Collazo's Declaration indicates a date of August 12, 2013 for the Settlement Agreement and Release. Collazo Decl. ¶ 13.

2

>of any order by, any Court….The settlement and Closing shall not be conditioned upon any of the Parties reaching settlements or agreements with Mariner Systems or its affiliates.

*Id*. at 9.

On August 12, 2013, Mariner assigned the Mariner Note Claim to Red River as part of a settlement agreement between Mariner and Red River.[3] *See* Ahrens Decl. ¶ 8.

On October 31, 2013, a final judgment was entered in the Arizona Federal Litigation. See Collazo Decl., Ex. E (Final Judgment, October 31, 2013). The Final Judgment opens with, "Pursuant to a Settlement Agreement effective June 15, 2013, and a Mutual Release effective June 28, 2013." *Id.*

On November 21, 2013, the Bankruptcy Court approved a Global Settlement Agreement ("Global Settlement") between Red River, Mariner, and then-Chapter 11 Trustee Beverly McFarland (now Chapter 7 trustee). *See* Ahrens Decl. ¶ 12; Compl., Ex. F (Order Granting Joint Motion to Approve the Mariner Global Settlement Agreement, November 21, 2013). The Global Settlement specifically "allows" the Mariner Note Claim in the amount of $6 million:

>The Mainer-CMC Scheduled Claim [Mariner Note Claim] shall be reduced and then allowed in the amount of $6 million and the assignment of such claim to RR [Red River] shall be approved (the 'RR-Mariner-CMC Allowed Claim'), all without subordination to any unsecured creditors not having priority claims.

Compl., Ex. E (Global Settlement). In bankruptcy parlance, "allow" refers to:

>the recognition of the validity of a claim against the estate. Only claims against the estate are 'allowed.' The term 'allow' is not used to refer to the determination that a debt survives as a personal liability of the debtor following bankruptcy.

*See* Collazo Decl., Ex. G (Bankruptcy Court's Memorandum Decision re Motion for Summary Judgment and Dismissal in Adv. Proc. No. 12-03060, interpreting the June 2013 Red River-Collazo Settlement Agreement, March 10, 2014). The Bankruptcy Court's Order acknowledged that Collazo "declined to enter the Settlement Agreement in which they are named as potential parties" and that Collazo is "not [a] Part[y] to the final Settlement Agreement." Compl., Ex. F (Order Granting Joint Motion to Approve the Mariner Global Settlement Agreement). Before the Bankruptcy Court approved the Global Settlement, Collazo filed objections to misstatements in

---

[3] Collazo's Declaration indicates a date of August 21, 2013 for the Transfer of Claim. Collazo Decl. ¶ 14.

the Global Settlement, but he withdrew his objections in part "because he was not a party to the Global Settlement." *See* Declaration of Joan Chisper ("Chisper Decl.") ¶ 3–4; Ahrens Decl. ¶ 11.

On March 10, 2014, the Bankruptcy Court issued an order in the Discharge Matter. *See* Collazo Decl., Exs. F–G. In its Order and Memorandum granting in part and denying in part Collazo's motion for summary judgment and dismissal, the Bankruptcy Court interpreted the Release as releasing Collazo personally from all claims that Red River had against him "as of the settlement date" in June 2013, except for the Retained Claims, which include a $3 million non-dischargeable claim and a claim of not less than $15 million against Collazo' bankruptcy estate, although the Bankruptcy Court did not decide the specific issue of whether the Release covered post-settlement claims. *See* Collazo Decl., Ex. F ("released all claims [Red River] had on that date against Collazo personally (as opposed to claims against his bankruptcy estate), except the $3 million dollar debt that Collazo agreed would be excepted from any discharge he might receive"); Ex. G ("provides for the release of all claims [Red River] had against Collazo as of the settlement date, except for 'Retained Claims'").

On August 11, 2014, the Bankruptcy Court issued another order in the Discharge Matter. *See* Declaration of Jeffrey Sellers in Support of Red River's Motion for Summary Judgment (Sellers Decl.), Ex. I (Order Denying Defendant's Motion to Dismiss and for Summary Judgment and Granting Plaintiffs' Motion for Leave to Amend). This time, the Bankruptcy Court denied Collazo's motion to dismiss and for summary judgment, finding that "each claim for relief asserted in the Second Amended Complaint alleges facts that, if taken as true, are sufficient to warrant the relief requested"–denial of debtor discharge based on fraudulent conduct–and granted Red River's motion for leave to add another claim, finding that there would be no undue delay. *Id.* On August 26, 2014, Red River filed its Third Amended Complaint in the Discharge Matter. Sellers Decl., Ex. II.

In September 2014, Collazo waived discharge, and the Bankruptcy Court approved Collazo's waiver of discharge on September 22, 2014. *See* Ahrens Decl. ¶ 14; Chisper Decl. ¶ 7. According to Collazo's bankruptcy attorney Joan Chisper, Collazo "waived discharge ultimately in part because of the existence of the Settlement and Mutual Release Agreement, which had been

4

repeatedly upheld to bar claims Red River and Mr. Eller attempted to reassert." *See* Chisper Decl. ¶ 7. However, Collazo's Application to Approve Waiver of Discharge Pursuant to 11 U.S.C. § 727(a)(1) states only that he could not afford to hire an attorney and did not wish to lose his Fifth Amendment right against self-incrimination by representing himself in trial on the Discharge Matter. Bankruptcy Case Dkt. Nos. 530–531.

On November 7, Red River filed the present suit against Collazo to recover the Mariner Note Claim for $6 million. *See* Compl.

On December 15, 2014, Collazo filed his answer, seventeen affirmative defenses (outlined below), and a counterclaim alleging that the earlier Release bars Red River from enforcing the Mariner Note Claim because this Claim was released. *See* Answer.

**B.     Motion**

Plaintiff Red River asserts that it is entitled to an entry of judgment in the amount of $6 million for the Mariner Note Claim ("Claim") because the Claim was an admitted obligation of Defendant, assigned to Red River, and allowed in the amount of $6 million in a bankruptcy court-approved settlement between Red River and the Trustee in Defendant's bankruptcy case. Mot. at 4. The bankruptcy court-approved settlement agreement gives rise to res judicata and bars re-litigation of Defendant's liability under the Claim. Mot. at 6. Once the bankruptcy court approved Defendant's waiver of discharge, Red River was entitled to enforce the Claim. Mot. at 6.

Red River further argues that Defendant's counterclaim for breach of the Mutual Release is also barred by res judicata, and in any event, the Mutual Release does not release Defendant from his obligation under the Mariner Note Claim. Mot. at 9. The reason is that the Mutual Release covers only claims that Red River had against Defendant as of June 28, 2013, and the Mariner Note Claim was not assigned to Red River until August 12, 2013. Mot. 9–10. Red River further argues that releasing Defendant from the Mariner Note Claim would be a windfall for Defendant because at the time he signed the Mutual Release with Red River, the Claim was a separate debt that Defendant owed to Mariner. Mot. at 10.

Finally Red River argues that Defendant's seventeen affirmative defenses are all barred by res judicata and none has merit: failure to state a claim is not an affirmative defense; lack of

consideration for "money lent" is either waived by Defendant's filing of the Claim in his schedules or barred by res judicata; the estoppel, waiver, and laches defenses lack factual support; "acts of others," "failure to mitigate damages," "conduct was justified," and "consent" are not applicable as the sole question is Defendant's liability under the Claim and the defenses lack factual support; "offset" and "Plaintiff's breach" presume that Defendant has asserted a valid counterclaim, which he has not, and furthermore are barred by the Mutual Release; the absence of malice is neither an element that Red River must establish nor a recognized defense to a commercial debt obligation; Defendant's res judicata defense lacks factual support; and claim-splitting does not bar Plaintiff's claims because "there is no basis to assert that the enforcement of the Mariner Note Claim can be precluded on the basis of any prior law suit." Mot. at 11–14.

### C. Opposition

Defendant offers five primary arguments. First, Defendant argues that Red River's claim is barred by res judicata because Red River's current claim is "related to and directly overlaps with" claims brought by Red River in the first amended bankruptcy adversarial proceeding, the federal securities case, and the state derivative case. Opp'n at 22–23. Defendant maintains that the bankruptcy court's dismissal of Red River's claim for "non-dischargeability of debt" in the adversary proceeding bars the present claim under res judicata. Opp'n at 22. Defendant also argues that Red River's allegations in the federal securities case and state case that Defendant "had a personal obligation $7 million loan owed to Marsys" should bar Red River's present claim because Red River brought "a claim around the Shareholder Loan" in July 2012. Opp'n at 23.

Second, Defendant argues that the Mutual Release signed by Defendant and Red River covers the Mariner Note Claim and thus bars Red River from asserting the Claim against Defendant. Opp'n at 24. Defendant's reasoning is that the Mutual Release did not become "effectuated" until the court entered judgment in the federal securities case on October 31, 2013. *Id.* Thus, since Red River acquired the Claim on August 12, 2013, before the "effective" date of the Release, the Claim was covered by the Release. *Id.* Defendant argues that alternatively, the Release's use of the language "all claims…that it has or *may have* against the Defendant Released Parties as of the date hereof" (emphasis added) coupled with Red River's admission that they were

negotiating with Mariner/Marsys while negotiating the Release with Defendant renders the Mariner Note Claim subject to the Release as a claim that Red River "may have" had against Defendant as of June 28, 2013. Opp'n at 25. Thus according to Defendant, by virtue of Mariner assigning the Claim to Red River, the Claim became subject to Defendant's Release. Assuming that his interpretation of the Release is correct, Defendant also argues that the Release should be complied with and that Red River's actions of acquiring the Claim after signing the Release and now attempting to enforce the Claim amount to fraud. Opp'n at 30.

Third, Defendant argues that he is not bound to the Global Settlement Agreement. Opp'n at 26–29. Defendant asserts that he was not a party to the settlement, the bankruptcy court's order approving the settlement confirmed that the settlement "specifically excludes the Defendant and the application to him," and the Trustee did not have authority through the settlement to waive Defendant's rights under the Release (assuming that Defendant's interpretation of the Release is correct). Opp'n at 26–27.

Fourth, Defendant challenges the validity of his waiver of discharge. Opp'n at 27. He claims that "Defendant only waived discharge because he knew he had the Settlement and Mutual Release, rendering the assigned Marsys claim [same as Mariner Note Claim] moot" and that "Defendant would not have waived discharge had he known Red River would mislead this Court about the Trustee's action somehow abrogating his rights under the…Mutual Release." *Id.*

Finally, Defendant argues that he is entitled to discovery on the communications between Red River, Marsys, and the Trustee. Opp'n at 31. Defendant explains that he needs discovery to support his affirmative defenses of Red River's "unclean hands" and "bad faith" in attempting to circumvent the Release. *Id.* He argues that "specifically, Defendant believes that the communications will show Red River's awareness of the relation of the…Claim here to the claims already asserted, and awareness and contemplation of the preclusive effect of the Settlement [Mutual Release] on this Claim, and manipulation of timing and presentation of the Claim to the bankruptcy court." *Id.* Defendant claims that "conversely this evidence will show Red River only bought [sic] the claim to improve relative position to other creditors and did not think could assert as an actual claim outside bankruptcy." *Id.*

### D. Reply

Red River counters that Collazo's Opposition does not controvert the material facts giving rise to res judicata and that all the arguments raised in the Opposition are barred by res judicata. Reply at 2–4.

Regarding Red River's alleged prior assertions of the same claim, Red River argues that the prior bankruptcy court adversary proceeding, federal securities case, and state case do not bar Red River's present claim under res judicata because Red River never asserted the Mariner Note Claim in any prior proceedings. Reply at 7. Red River explains that it could not have asserted the Mariner Note Claim because "the claim was…owned and held by Mariner Systems, and that claim was subject to the exclusive jurisdiction of the bankruptcy court after Collazo filed his Chapter 11 proceeding and listed the claim." Reply at 8. Red River explains that in the bankruptcy adversary proceeding, it asserted a claim that Defendant was not entitled to discharge, which is different from a claim to enforce the Mariner Note Claim. Reply at 8. Red River explains that it merely alleged that Defendant had the Mariner personal loan as an example of self-dealing to support its argument for non-discharge. *Id*. Red River explains that likewise in the federal securities case and state case, it alleges that Defendant admitted to the Mariner personal loan not as a claim of entitlement but as part of the factual background to support its fraud claim. Reply at 10. Red River adds that it could not have included the Mariner Note Claim as an additional claim in its federal securities case because at the time of the court's entry of judgment on October 31, 2013, the Claim was already the subject of the bankruptcy case and the bankruptcy court had already entered an order allowing the Claim but without yet any findings concerning the Claim's discharge. Reply at 11.

Regarding the scope of the Mutual Release, Red River argues that the Mutual Release as a matter of law does not release Defendant from his obligation under the Mariner Note Claim. Reply at 6. First, Red River argues that the interpretation of contracts is a legal issue appropriate for summary judgment. Reply at 6. Next, Red River asserts that the plain language of the Mutual Release states that later-acquired claims are not released: "has or may have against the Defendant Released Parties as of the date hereof." Reply at 7. As support, Red River alleges that Judge

1  Carlson noted that the Mutual Release "plainly means that the released claims are those held as of
2  the date of the Mutual Release – June 28, 2013." Reply at 7.

3      Regarding the res judicata effect of the Global Settlement Agreement, Red River argues
4  that Defendant is bound by the Global Agreement Settlement. Reply at 12. Specifically,
5  Defendant, as debtor in the bankruptcy, was a party in interest and thus had standing to object to
6  the court's approval of the settlement including the allowance of the Mariner Note Claim. Reply at
7  3. Red River argues that therefore it does not matter that Defendant was not a party to the
8  settlement; he was a party in interest and thus bound to the settlement by res judicata. *Id.*

9      Finally, regarding Defendant's request for discovery, Red River responds that Defendant's
10 request should be denied because inquiry into events that occurred prior to the bankruptcy court's
11 order approving the Global Settlement Agreement is barred by res judicata. Reply at 13–14.

## III. LEGAL STANDARD

Summary judgment is appropriate if the movant shows that there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it "might affect the outcome of the suit under governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

///
///
///
///

## IV. ANALYSIS

### A. Red River Is Entitled to Relief on the Claim against a Defendant Because the Claim is Allowed, Not Discharged, and the Stay against Relief is Lifted.

Absent factual disputes, the holder of a claim that was allowed and not discharged by the bankruptcy court is entitled to summary judgment on the claim once the stay against relief is lifted. *See Miller v. Media Servs. Acquisition Corp.*, No. C09-1425JLR, 2014 WL 3015546, at *3 (W.D. Wash. 2014) (granting plaintiffs summary judgment on their unsecured claims against defendant-debtors, where the bankruptcy court entered an order allowing the claims and denying discharge on the claims).

#### 1. The Bankruptcy Court Allowed the Claim for $6 Million and its Allowance is a Final Judgment for Res Judicata Purposes.

In bankruptcy, an "allowed" claim refers to a valid claim against the estate–a claim upon which holders may receive distributions from the bankruptcy estate. *See In re Collazo*, No. 12-30217 TEC, 2014 WL 928991, at *4 (Bankr. N.D. Cal. 2014) (Allow "refers to the recognition of the validity of a claim against the estate"); *In re Kronemyer*, 405 B.R. 915, 920 (B.A.P. 9th Cir. 2009) ("allowability of claims is a bankruptcy concept. For instance, only holders of allowed claims may receive distributions from the bankruptcy estate in chapter 7 cases").

When an allowed claim is not discharged, the debtor becomes personally liable for the allowed claim (i.e. the holder of the allowed claim may assert the claim against the debtor personally as opposed to only against the bankruptcy estate). *See Miller,* No. C09-1425JLR, 2014 WL 3015546, at *3 ("The remainder of their Allowed Claim was not discharged…. Therefore, Defendants [debtors] remain liable to Plaintiffs for the outstanding $380,133.00").

A debtor is barred from attacking the creditor's right to an allowed claim because the bankruptcy court's allowance of a claim gives rise to res judicata. *Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 529 (9th Cir. 1998) ("a bankruptcy court's allowance or disallowance of a claim is a final judgment"). The bankruptcy court does not need to make a specific finding of allowance–a court's approval of a settlement agreement, where the settlement agreement allows the claim, is sufficient. *See Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902-03 (9th Cir. 2001) ("A judicially approved settlement agreement is considered a final judgment on the

merits," where debtors agreed to reaffirm a portion of allegedly nondischargeable debt in a settlement); *Siegel*, 143 F.3d at 530 (the court does not need to issue any separate order allowing a claim because the mere filing of proofs of claim, absent objections by any parties-in-interest, is enough to deem a claim allowed for res judicata purposes); *see also In re Klasinski*, 215 B.R. 181, 183 (Bankr.C.D.Ill.1997) (similarly, judgment order approving a stipulation of nondischargeability is also given preclusive effect).

Here, the Bankruptcy Court approved the Global Settlement Agreement. Compl., Ex. F (Bankruptcy Court's Order Granting Joint Motion to Approve the Mariner Global Settlement Agreement). The Global Settlement Agreement allows the Mariner Note Claim for $6 million and approves Mariner's assignment of the Claim to Red River: "The Mariner-CMC Scheduled Claim shall be reduced and then allowed in the amount of $6 million and the assignment of such claim to RR shall be approved…all without subordination to any unsecured creditors not having priority claims." Compl., Ex. E (Global Settlement Agreement). Therefore, the Bankruptcy Court allowed the Mariner Note Claim for $6 million and the allowance is a final judgment for res judicata purposes. *See Rein*, 270 F.3d at 903; *Siegel*, 143 F.3d at 530.

### 2. The Claim Was Not Discharged Because the Bankruptcy Court Approved Defendant's Waiver of Discharge and its Approval is a Final Judgment for Res Judicata Purposes.

A bankruptcy court's approval of a debtor's post-petition waiver of discharge has the same effect as denying the debtor discharge. *See Miller*, No. C09-1425JLR, 2014 WL 3015546, at *3; *In re Nelson*, No. 05-10660, 2006 WL 2091899, at *2 (Bankr. N.D. Cal. 2006) aff'd, No. BAP NC-07-1093KSP, 2007 WL 2385094 (B.A.P. 9th Cir. 2007) aff'd, 334 F. App'x 65 (9th Cir. 2009) ("The Bankruptcy Code does not differentiate between a discharge denied after a trial and one waived before trial); 11 U.S.C. § 727(a)(10) ("The court shall grant the debtor a discharge, unless…(10) the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter"); *see also In re Clement*, 136 B.R. 557, 559 (Bankr. C.D. Cal. 1992) (the date of the order for relief is the date that debtor filed her bankruptcy petition). Like an order approving a settlement, an order approving a stipulation of nondischargeability is also given preclusive effect. *See In re Klasinski*, 215 B.R. 181, 183 (Bankr.C.D.Ill.1997)

Here, Collazo filed a written waiver of discharge in September 2014. Bankruptcy Case Dkt. Nos. 530–531. The Bankruptcy Court approved Collazo's waiver of discharge. *See* Ahrens Decl. ¶ 14. Thus, Collazo was effectively denied discharge as was the Mariner Note Claim. 11 U.S.C. §§ 362(a)(1)—(c)(2)(C) (when a debtor is denied discharge, the automatic stay of proceedings to recover pre-petition claims against the debtor is lifted).

Defendant insinuates that his waiver is invalid because in waiving discharge, he relied on the understanding that the Mutual Release would protect him from Red River's assertion of the Mariner Note Claim. Opp'n at 27. First, the Bankruptcy Court's approval of Defendant's discharge waiver is a final judgment on the merits. *See In re Klasinski*, 215 B.R. 181, 183 (Bankr.C.D.Ill.1997). In addition, court-approved waivers of discharge are enforced despite debtors' subsequent assertions that when they waived discharge, they did not understand the consequences of their waiver. *In re McCutcheon*, 448 B.R. 863, 865-66 (Bankr. N.D. Ga. 2011). Defendant does not provide legal authority that suggests that his waiver is invalid or unenforceable, and nor does the Court know of such authority.

### 3. Red River May Seek Judgment against Defendant Because the Denial of Discharge Lifted the Automatic Stay Protecting Debtor against Creditors' Claims.

A bankruptcy court's denial of debtor discharge lifts the automatic stay. § 362(c)(2)(C) ("the time a discharge is granted or denied"). Once a bankruptcy court lifts the automatic stay that protects a debtor from collection efforts, creditors can pursue their claims against the debtor and district courts have authority to enter judgment on a claim. *See Barona Grp. of Capitan Grande Band of Mission Indians v. Am. Mgmt. & Amusement, Inc.*, 840 F.2d 1394, 1399 (9th Cir. 1987) (contrary to defendant's assertion, district court had jurisdiction to enter judgment granting declaratory relief because it did not enter judgment until after the bankruptcy court entered an order granting partial relief from the automatic stay).

Here, Collazo's filing of a voluntary petition for bankruptcy automatically stayed any proceedings to recover the Mariner Note Claim against Collazo. Bankruptcy Case Dkt. No. 1; 11 U.S.C. § 362(a)(1) (a petition filed as a voluntary case under section 301 "operates as a stay, applicable to all entities, of—(1) the commencement or continuation…of a judicial,

administrative, or other action or proceeding…to recover a claim against the debtor that arose before the commencement of the case under this title"); *see also Erman v. Lox Equip. Co.,* 142 B.R. 905, 907 (N.D. Cal. 1992) (on the other hand, a post-petition claim, which arises after the bankruptcy case has commenced, is not subject to § 362(a)(1)'s stay against collection). Then, the Bankruptcy Court's approval of Collazo's waiver of discharge lifted the automatic stay, exposing Collazo to proceedings to recover the Mariner Note Claim. *See* Bankruptcy Case Dkt. No. 533; § 727(a)(10) ("The court shall grant the debtor a discharge, unless…(10) the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter"); §§ 362(a)(1)—(c)(2)(C) (when a debtor is denied discharge, the automatic stay of proceedings to recover pre-petition claims against the debtor is lifted).

### B. Res Judicata Applies in this Case and Bars Defendant from Attacking Red River's Right to the Mariner Note Claim.

Res judicata applies in this case to bar Defendant from attacking Red River's right to judgment on the Mariner Note Claim.

Two cases cited by Plaintiff are dispositive here. In *Miller*, the plaintiffs sued defendant-debtors for the unpaid balance of a claim that was allowed and not discharged by the bankruptcy court, and plaintiffs filed an unopposed motion for summary judgment, asserting res judicata. *Miller*, No. C09-1425JLR, 2014 WL 3015546. The *Miller* court granted summary judgment, finding that res judicata applied:  (1) the bankruptcy court was a court of competent jurisdiction; (2) the bankruptcy court rendered a final judgment on the merits; (3) the same cause of action was at issue in both proceedings; and (4) the claims in both proceedings involved identical parties. *Id.* at 3.

In *Siegel*, debtors declared bankruptcy and creditor filed two proofs of claim against debtors, which debtors did not object to. *Siegel*, 143 F.3d at 528. The bankruptcy court granted creditor relief from the stay so that the creditor could enforce its claims–foreclosure. *Id.* The debtors then filed an action in state court asserting creditor's breach of contract and tort, which essentially attacked the creditor's right to recover on its proofs of claim. *Id.* at 529. The creditor removed the state suit to federal court and moved for summary judgment, asserting res judicata.

13

*Id.* at 528. The district court granted summary judgment and the Ninth Circuit affirmed, finding that res judicata applied. *Id.* In particular, debtors could have attacked the creditor's right to its proofs of claim in bankruptcy court with the same arguments debtors raised in state court, and the same claim was involved in both proceedings: (a) creditor's rights established in the bankruptcy would be affected by resolution of the current action; (b) the current suit and the proofs of claim stem from the same nucleus of facts; (c) they involve similar evidence; and (d) the interests at stake in both actions involve the creditor's right to recovery. *Id.* at 529.

Res judicata applies here as well. The Bankruptcy Court is a court of competent jurisdiction, and its approval of the Global Settlement Agreement allowing the Mariner Note Claim as well as its approval of Defendant's discharge waiver constituted final judgments for the purpose of res judicata. *See Miller*, No. C09-1425JLR, 2014 WL 3015546, at *3; *Rein*, 270 F.3d at 903. The claim at issue in the Bankruptcy Court and in this Court is the same: the interest at stake is Red River's right to recover the Mariner Note Claim against Collazo. The adjudication of this case would affect the rights and interests established by the Bankruptcy Court: Collazo is now arguing that Red River's claim is barred by the Mutual Release, and thus adjudicating this case would mean re-determining Red River's right to the Mariner Note Claim. Both proceedings stem from the same nucleus of facts and involve similar evidence, namely Collazo's schedule of liabilities, which includes the Mariner Note Claim, the assignment of the Claim, and the Mutual Release, which was attached as an exhibit to the Global Settlement Agreement. See Compl., Exs. A (Schedule of Liabilities), C (Assignment of Claim), D (Notice of Transfer of Claim), E (Global Settlement Agreement) at 29.

Finally, identical parties are involved in the claims: Red River and Collazo. Collazo suggests that because he declined to enter the Global Settlement Agreement and was not a "part[y] to the final Settlement Agreement," he is not bound by the Bankruptcy Court's allowance of the Mariner Note Claim. Compl., Ex. F (Order Granting Joint Motion to Approve the Mariner Global Settlement Agreement); Opp'n at 26. To the contrary, for res judicata purposes, the fact that Collazo declined to be a settling party to the Global Settlement does not free him of all court-approved terms of the agreement, which bind him whether he was a party to the settlement or not,

14

because he was a party in interest to the Bankruptcy Court's order. *See Siegel*, 143 F.3d at 531 (finding that debtor who did not object to the allowance of claim has no persuasive reason not to be bound to the allowance for res judicata purposes); *In re Glenn*, 160 B.R. 837, 838 (Bankr. S.D. Cal. 1993) (where trustee gave notice of proposed settlement to all interested parties, all creditors who received notice were considered parties involved in the settlement for purposes of determining identity of parties in res judicata); *In re Turner*, 274 B.R. 675, 678 (Bankr. W.D. Pa. 2002) ("The Debtor is entitled to notice of any proposed settlement by the Trustee and an opportunity to voice concerns over a proposed settlement, but it is the Trustee who has authority to accept or reject any offers subject to Bankruptcy Court approval"); *United States v. Coast Wineries*, 131 F.2d 643, 648 (9th Cir. 1942) ("It may also be conceded that the allowance or disallowance of a claim in bankruptcy should be given like effect as any other judgment of a competent court, in a subsequent suit against the bankrupt or any one in privity with him"); *In re Medomak Canning*, 922 F.2d 895, 901 (1st Cir. 1990) ("In order efficiently to administer the estate, a trustee's court-approved settlement must have finality, and settling parties must be assured that those the trustee represents will not relitigate settled claims").

### C. Defendant's Arguments are Barred under Res Judicata.

Res judicata bars Defendant from raising any arguments that he could have raised in bankruptcy court with respect to Red River's right to recover the Mariner Note Claim. *See Rein*, 270 F.3d at 898-99; *Siegel*, 143 F.3d at 529. Thus, res judicata forecloses Defendant's remaining arguments and his affirmative defenses.

### D. The Mutual Release Does Not Release Defendant from His Obligation under the Claim.

Under the principles of contract interpretation, the Mutual Release does not release Collazo of his obligation under the Mariner Note Claim. Contract interpretation presents a question of law. *Braxton v. United States*, 500 U.S. 344, 350 (1991). The Mutual Release is governed by Arizona law: "This Release shall be governed, construed and enforced in accordance with the laws of the State of Arizona, without giving effect to the principles thereof relating to conflicts of laws, except where federal bankruptcy or other state or federal law is noted." Ahrens Decl., Ex. 1

15

(Mutual Release).[4] Under Arizona law, courts first look to the "plain meaning of the words as viewed in the context of the contract as a whole." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 259 (Ct. App. 1983). Only if the language of the contract is ambiguous do courts then look to the surrounding circumstances to determine the parties' intent. *Desarrollo Immobiliario y Negocios Industriales De Alta Tecnologia De Hermosillo, S.A. De C.V. v. Kader Holdings Co.*, 229 Ariz. 367, 371 (Ct. App. 2012). If contract language is "reasonably susceptible" to the interpretation asserted by its proponent, parol evidence is admissible to determine the meaning intended by the parties. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154 (1993). Where no competent evidence suggests that the parties intended a meaning different from the plain meaning of the words, courts should apply the plain meaning of the text. *See Taylor*, 175 Ariz. at 154.

Here, it is plain and unambiguous that "all claims that [Red River] has or may have against [Carlos Collazo] as of the date hereof" does not include the Mariner Note Claim assigned to Red River two months after the execution of the Release. *See* Ahrens Decl., Ex. 1 (Mutual Release). First, contrary to Defendant's assertion, the effective date of the Release is not the date of the final judgment. The Release specifically provides the Release to be executed on the Closing Date, defined as June 28, 2013, and not conditioned on the "approval of, or entry of any order by, any Court." *Id*. at 9. Second, the Release released claims that Red River *had* or *may have had* as of the Closing Date, but it did not purport to release claims that Red River *did not have* as of the Closing Date. The Mariner Note Claim is a claim that Red River indisputably did not have as of the Closing Date. The Mutual Release does not release Collazo of his obligation under the Mariner Note Claim.

### E. Defendant is Not Entitled to Additional Discovery

Discovery is closed, and Defendant does not meet the criteria for reopening discovery

---

[4] California, the state where this Court sits, applies the law selected by the parties to govern their contractual rights and duties pursuant to the Restatement (Second) of Conflict of Laws. *Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc*., 38 Cal. App. 4th 1532, 1544-46 (1995).

before ruling on a summary judgment. *See Chance v. Pac-Tel Teletrac Inc*., 242 F.3d 1151, 1161 (9th Cir. 2001). First, Defendant has not shown diligent pursuit of previous discovery opportunities. *See Id.* For example, at the end of the discovery deadline, Defendant filed a Case Management Conference Statement that indicated, "No discovery has been taken to date nor does Defendant believe any is necessary to decide the dispositive motions." Dkt. No. 22. Defendant has neither cited nor alluded to any reason for not requesting the identified discovery earlier in the proceedings. Second, Defendant has not proffered any facts to show that the sought evidence of fraud and mal-intent exists, other than his sheer "belief." *See* Collazo Decl. ¶ 20. Finally, Defendant has not shown that the evidence he seeks would prevent summary judgment because any arguments based on the requested evidence are barred by res judicata. The Court has determined that the Release plainly does not release Collazo from the Mariner Note Claim, and thus any evidence of Red River's intent to circumvent the Release would also be irrelevant. *See Marcin Eng'g, LLC. v. Founders at Grizzly Ranch, LLC*., 219 F.R.D. 516, 521 (D. Colo. 2003).

### F. Prior Proceedings Do Not Have Res Judicata Effect on Red River's Present Claim.

The Arizona Federal Litigation, Arizona State Litigation, and the Discharge Matter do not give rise to res judicata against Red River's current claim. First, the Court has no evidence of any final judgment on the merits in the Arizona State Litigation or the Arizona Federal Litigation. Furthermore, the claims in the prior proceedings are different from the claim in the current suit. Under federal law and Arizona law, for res judicata to apply, the same claim must be at issue in both proceedings. *See Rein*, 270 F.3d at 898-99; *Hall v. Lalli,* 194 Ariz. 54, 57 (1999). In the Arizona Federal Litigation and Arizona State Litigation, Red River asserted claims of fraud, based in part on the factual allegation that Collazo wrongfully took out a personal loan from his company. *See* Collazo Decl., Exs. B—C (Complaints). In the Discharge Matter, Red River sought a denial of debtor discharge. *See* Sellers Decl., Exs. I—II (Bankruptcy Court's Order on the Discharge Matter and Third Amended Complaint). None of these claims is the same as a claim for entry of money judgment on the Mariner Note Claim. *See Rein*, 270 F.3d at 898-99; *Phoenix Newspapers, Inc. v. Dep't of Corr., State of Ariz.*, 188 Ariz. 237, 240 (Ct. App. 1997). Thus res

judicata does not apply to Red River's present claim.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's Motion is GRANTED.

**IT IS SO ORDERED.**

Dated: April 8, 2015

JOSEPH C. SPERO
Chief Magistrate Judge